UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Industrial Communications
and Electronics, Inc. *et al.*

    v.                                      Civil No. 07-cv-82-JL

Town of Alton,
David Slade, and Marilyn Slade


Industrial Tower
and Wireless, LLC

    v.                                      Civil No. 08-cv-122-JL
                                            Opinion No. 2010 DNH 081

Town of Epping and
Jane Burley

**MEMORANDUM ORDER**

These cases raise the question of whether an intervenor who presents no independent federal claims can persist in litigating an action that the principal parties seek to resolve upon a negotiated settlement.  As explained below, the answer is no.

**I.   Background**

Each of the cases was commenced by a provider of personal wireless services to challenge a decision by a local land use authority denying permission to construct a cellphone tower.  The providers claimed that the decisions violated the Telecommunications Act of 1996 (the "TCA"), specifically 47

U.S.C. §§ 332(a)(7)(B)(i)(II) and 332(a)(7)(B)(iii), and, in one case, asked for judicial review of the decision as authorized by N.H. Rev. Stat. Ann. § 677:15.  Each provider sought, among other relief, a declaration that the decision was therefore invalid and an injunction requiring the defendant town to allow construction of the proposed tower.

In each case, a local landowner whose property abuts the proposed tower site subsequently moved to intervene, both as of right and permissively, under Rule 24 of the Federal Rules of Civil Procedure.  These abutters--David and Marilyn Slade in the case against the Town of Alton and Jane Burley in the case against the Town of Epping--argued that the proposed tower would adversely impact their property interests, particularly by obstructing their views.  The Slades' motion was granted without any objection from the provider or explanation by the court.  See Order of Aug. 2, 2007 (Barbadoro, J.).  In granting Burley's motion over the provider's objection, the court noted in a margin order that "[t]he motion satisfies the criteria for intervention as of right under Rule 24(a)(2).  See Nextel Commc'ns of the Mid-Atl. Inc. v. Town of Hanson, 311 F. Supp. 2d 142, 150-52 & 160 (D. Mass. 2004)."  Order of Sept. 30, 2008 (Laplante, J.).

Following substantial motion practice in each case, the provider and the town notified the court that they had settled.

Alton and the provider in its case filed an "Agreement for Entry of Consent Decree," while Epping and the provider in its case filed a "Joint Motion to Approve and Implement Settlement Agreement."  Each of these filings called upon the court to issue an order granting the provider permission to build a cellphone tower at the proposed location subject to a number of conditions and, implicitly or explicitly, to enter judgment ending the case.

Each of the filings also noted that the intervenor purported to "object" to the settlement.  The court therefore ordered the intervenors "to file a memorandum regarding their continued standing in this matter following such a settlement under applicable law."  Each intervenor did so, and responses from the provider and the town followed (as well as an additional round of briefing in the Alton case).

**II.   Analysis**

**A.   The abutters never presented any claims for adjudication**

"It has never been supposed that one party--whether an original party, a party that was joined later, or an intervenor--could preclude other parties from settling their own disputes and thereby withdrawing from the litigation."  Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 528-29 (1986).  In light of this inarguable reality, the intervenors'

position that they "object" to the settlement is difficult to understand.  They can no more "object" to the town's settlement of claims brought against it than any third party--including, even, a co-defendant to a claim asserting joint and several liability--could "object" to another defendant's settlement of the plaintiff's claim against it.

"Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party," so that "approval of a consent decree between some of the parties therefore cannot dispose of the claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor."  Id. at 529.  The problem here, as the towns appropriately point out, is that the intervenors have not "properly raised" any claims of their own.  When their motions to intervene were granted, in fact, Burley filed an answer without making any counterclaims or cross-claims, and the Slades did not file any pleading whatsoever.  Like the intervenor in Local 93, the intervenors here "did not allege any causes of action or assert any claims against" any of the original parties to the lawsuit.  Id. at 507.  Just as in Local No. 93, then, this court can enter judgment based on the consent of all parties to the only claims that have in fact been asserted, despite the intervenors' purported "objections."  See id. at 529.

Burley does not argue to the contrary. Indeed, she concedes "that if the Town and [the provider] have, in fact, reached a valid and enforceable settlement of this dispute, then there is no need for her claims to continue in this forum," without identifying what those claims are or whether they were ever presented here. Again, she never raised any counterclaims.

The Slades, in contrast, argue that despite the settlement they "retain the right to press their claims that the proposed telecommunications tower violates local zoning ordinances and that the ZBA's decision does not contravene the Federal Telecommunications Act." Again, though, the Slades never made any such claims: they never filed any pleading, and even their motion to intervene and supporting memorandum do not assert that Alton's decision to disallow the tower was consistent with the TCA. Indeed, until their recently filed briefing on whether judgment could enter without their consent, the Slades have submitted nothing whatsoever on the merits of the provider's TCA claims, leaving the litigation of that issue to the principal parties, who filed voluminous summary judgment papers.

Yet the Slades intervened in this case more than two years ago, and the deadline for amendment of pleadings has long since passed, with the trial date approaching. This unexplained delay is reason enough to conclude that the Slades cannot now start

pursuing a claim that Alton's decision to disallow the proposed tower complied with the TCA.[1]  See Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1518 (1st Cir. 1989).

---

[1] That assumes, of course, that the Slades could have brought such a "claim" in the first place, essentially putting themselves, as private citizens, in the position of defending a decision rendered by a public authority.  This court has serious doubts about a private citizen's ability to do so, particularly after (as has happened here) the public authority decides that it no longer wants to defend the decision.  See S. Cal. Edison Co. v. Lynch, 307 F.3d 794, 807 (9th Cir. 2002) (ruling that a consumers' group, which had intervened to defend state utilities commissioners against a challenge to their ratesetting practices brought by a utility had no "valid claims" to assert once the commissioners settled the utility's claims).  That would seem to allow private citizens--whose interests in upholding the authority's decision are necessarily their own, rather than those of the public at large--to arrogate the authority's decisionmaking power to themselves simply by intervening in litigation challenging such decisions, and then refusing to go along with the authority's subsequent choice to stop defending the decision and settle the case.
    The cases cited by the Slades do not address this problem, because they allowed an intervenor to maintain a challenge to administrative action brought, but later abandoned, by another private citizen.  They did not allow a private citizen to maintain the defense of an administrative action abandoned by the administrator itself.  See U.S. Steel Corp. v. EPA, 614 F.2d 843, 844-45 (3d Cir. 1979); Bates v. D.C. Bd. of Zoning Adjustment, 639 A.2d 607, 609-11 (D.C. 1994); cf. City of New Haven v. Chem. Waste Mgmt. of Ind., L.L.C., 685 N.E.2d 97, 98-102 (Ind. Ct. App. 1997) (allowing a city to continue pursuing claims settled by its zoning officers).  In those cases, then, the question was not whether the authority would have to continue defending its decision in court, but simply against whom.  The Slades have presented no authority for the troubling proposition that an intervenor can take over a public entity's authority to defend one of its decisions in the way they seek to do here.

The Slades' purported claim that the proposed tower violates local zoning law, however, stands on slightly different footing. That claim was not ripe until Alton agreed to allow the provider to put up a cell tower as a settlement of the case and therefore could not have been asserted earlier. Yet it does not follow that the Slades can now bring that claim in this court.

As the Supreme Court recognized in Local No. 93, "'an intervenor can continue to litigate after dismissal of the party who originated the action.'" Benavidez v. Eu, 34 F.3d 825, 830 (9th Cir. 1994) (quoting U.S. Steel Corp., 614 F.2d at 845). Nevertheless, once the claim that originally gave rise to federal subject-matter jurisdiction is dismissed, the court cannot adjudicate the intervenor's claim unless it provides "'a separate and independent basis for jurisdiction.'" Id. (quoting Fuller v. Volk, 351 F.2d 323, 328-29 (3d Cir. 1965), and citing cases from other federal courts of appeals)). Indeed, the Slades themselves expressly acknowledge that "[t]he key requirement for [them] to continue this case is an independent jurisdictional basis for their claim." Yet they do not identify any.

A complaint that local officials violated state and local law generally does not itself present any federal question, see, e.g., Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992), and the Slades have not attempted to explain how theirs

7

nevertheless would.  The Slades' claim that the tower would violate local zoning law, then, does not allow them to continue litigating here even though the provider wants to settle its claims against Alton under the TCA, which were the basis for this court's subject-matter jurisdiction in the first place.

The Slades also argue that "[i]f this Court enters the consent decree . . . it will create an independent claim" by them under the TCA and hence federal law.  There are at least two fatal problems with this argument.  First, the Slades did not raise it until their reply memorandum, so it is waived.  <u>See</u>, e.g., <u>Doe v. Friendfinder Network, Inc.</u>, 540 F. Supp. 2d 303 n.16 (D.N.H. 2008).  Second, the TCA provision they cite does not authorize a claim where permission to construct a wireless facility is granted rather than denied.  The provision, 47 U.S.C. § 332(c)(7)(B)(v), creates a private right of action in "[a]ny person adversely affected by any final action or failure to act by a State or local government or instrumentality thereof <u>that is inconsistent with this subparagraph</u>" (emphasis added).  The Slades ignore this crucial limiting language.

The "subparagraph" in question prohibits states and localities from (i) regulating the placement of personal wireless service facilities so as to unreasonably discriminate among providers of functionally equivalent services, or to prohibit or

have the effect of prohibiting the provision of those services, (ii) failing to act on a request to place wireless facilities within a reasonable time, (iii) denying such a request unless the denial is in writing and supported by substantial evidence in a written record, and (iv) regulating the placement of personal wireless services facilities based on the environmental effect of radio frequency emissions that comply with FCC regulations. See 47 U.S.C. §§ 332(c)(7)(B)(i)-(iv). Aside from, potentially, the ban on discrimination among providers, which is not at issue here, the subparagraph imposes no restrictions on a state or locality's decision to <u>allow</u> the placement of personal wireless service facilities. Such a decision, then, cannot be "inconsistent with this subparagraph" so as to give rise to a private cause of action under 47 U.S.C. § 332(c)(7)(B)(v), as a number of courts have held. See <u>Jaeger v. Cellco P'ship</u>, No. 09-567, 2010 WL 965730, at *8 (D. Conn. Mar. 16, 2010); <u>Drago v. Garment</u>, ___ F. Supp. 2d ___, No. 08-6356, 2010 WL 769692, at *3-*4 (S.D.N.Y. Mar. 2, 2010); <u>Mason v. O'Brien</u>, No. 01-1556, 2002 WL 31972190, at *3-*4 (N.D.N.Y. Sept. 30, 2002). The Slades provide no authority to the contrary. Because they have not properly presented any claim within this court's subject-matter

jurisdiction, the Slades cannot continue litigating here now that the claim which created that jurisdiction has been settled.[2]

---

[2] The Slades urge the court to "consider the practical impact of its possible ruling and how that ruling will be viewed by the users of the federal court system," arguing that "expediency in the conclusion of this matter cannot be a justification for setting aside the merits of all the claims and defenses put forward by the various parties." First, this completely ignores the fact that, as just discussed, the Slades never tried to put forward any claim or defense until the original parties had announced their settlement. Indeed, when the court originally ordered them in September 2009 to explain their "continued standing in this matter following such a settlement," based on the original parties' indication that one was imminent, the Slades asked for--and were granted--relief from having to make such a showing until a settlement had actually been reached. In light of this, and the fact that, as also just discussed, the Slades have not filed anything of substance in this case until now, their complaint that entering judgment over their "objection" would "threaten future intervenors with incurring large expenses of both time and funding only to find themselves disenfranchised" is completely without merit.

Second, this court is not entering judgment out of a desire for "expediency in the conclusion of this matter," but because, as just explained, the original parties have resolved the only properly presented claim that gave this court jurisdiction over this dispute. This court cannot exercise jurisdiction it does not have, regardless of how it might "be viewed" (to use the Slades' words) by litigants unfamiliar with the limited nature of federal jurisdiction. The Slades seem to be missing the point: this court is not saying that they have no remedy for the injury they claim the proposed tower will cause them, only that this court would have no jurisdiction to provide it (assuming they are entitled to one, an issue on which this court expresses no opinion whatsoever). That is not "disenfranchisement" or anything of the sort.

**B.      The Towns' power to settle these cases**

Both the Slades and Burley argue at length that the Towns' agreement to issue the required permits for the towers as a settlement of these lawsuits is in violation of state law requiring land use permits to issue only as the result of public meetings and the like.  This court, however, expresses no views on the merits of those arguments, and need not resolve them in order to enter the judgments that the providers and the towns have requested.  "[I]n the usual litigation context courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it; the actual merits of the controversy become inconsequential."  Dacanay v. Mendoza, 573 F.2d 1075, 1078 (9th Cir. 1978); see also 18A Charles Alan Wright et al., Federal Practice & Procedure § 4443, at 257 (2d ed. 1997).

Thus, this court need no more inquire into any aspect of the settlements here--including the Towns' legal authority to agree to them--than this court need inquire into any party's legal authority to enter into a settlement of any case.  To take one example, this court regularly allows corporations to settle actions brought by and against them without inquiring into whether the corporation had the authority to do so without the consent of its board of directors, or some committee thereof,

and, if so, whether that consent was properly given and so forth. Neither Burley nor the Slades has provided any caselaw to support their view that this court must prevent the towns from settling these cases unless they can show that they did so in full compliance with the procedural demands of state land-use law.

Furthermore, as the towns and providers point out, the court of appeals has expressly upheld--in circumstances similar, if not identical, to those here--a district court's approval of a settlement agreement in a case under the TCA that called for the issuance of "injunctive relief in the form of an order requiring that the wrongfully withheld permit issue," despite objections that this course violated "the procedural strictures of Massachusetts zoning law." Brehmer v. Planning Bd. of Town of Wellfleet, 238 F.3d 117, 118-21 (1st Cir. 2001). The Slades argue that Brehmer nevertheless provides no authority for this court to issue such an order over their objections because the town "has not admitted a violation of the TCA." But neither did the town in Brehmer: it "essentially admitted as much when it entered into a negotiated settlement with [the provider] and agreed to issue, without further process, a permit it had already denied." Id. at 120 (emphasis added). That is what Alton has done here. Thus, just as in Brehmer, "a remand to the [local

land use] Board would serve no useful purpose," whatever procedural requirements state law might impose.  Id. at 121.

### III. Conclusion

For the foregoing reasons, the clerk shall enter judgment in the Alton case, No. 07-cv-082-JL, in the form of the proposed "Judgment and Order" submitted by the Town and the provider,[3] except that the following language shall be added to the end of subparagraph 6(d):  "Nothing in this order shall prevent this court from staying or otherwise granting relief from it according to applicable law."  In the Epping case, No. 08-cv-122-JL, the "Joint Motion to Approve and Implement Settlement Agreement"[4] is granted and the clerk shall enter judgment accordingly.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  May 7, 2010

---

[3] Document no. 66-1.

[4] Document no. 37.

cc: Steven E. Grill, Esq.
    Anthony S. Augeri, Esq.
    Katherine Blackall Miller, Esq.
    Robert D. Ciandella, Esq.
    Robert M. Derosier, Esq.
    Paul T. Fitzgerald, Esq.
    Lawrence M. Edelman, Esq.
    Robert M. Derosier, Esq.
    John T. Ratigan, Esq.
    Jeffrey C. Spear, Esq.