UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| INDUSTRIAL COMMUNICATIONS<br>AND ELECTRONICS, INC., et al.,<br>    Plaintiffs,<br><br>v.<br><br>TOWN OF ALTON, NEW HAMPSHIRE,<br>    Defendant,<br><br>and<br><br>DAVID SLADE AND MARILYN SLADE,<br>    Intervenor-Defendants | Docket No.  1:07-CV-82-JL |

**PLAINTIFFS' OBJECTION TO MOTION FOR STAY
WITH INTEGRATED MEMORANDUM OF LAW**

NOW COME the Plaintiffs, Industrial Communications and Electronics, Inc., RCC Atlantic, Inc. d/b/a Unicel, and U.S.C.O.C. of New Hampshire RSA #2, Inc. d/b/a U.S. Cellular, by and through their attorneys, Devine, Millimet & Branch, Professional Association, and respectfully object to the Intervenors' Motion For A Stay of Order, and in support of thereof, state as follows:

    1.    On May 13, 2010, this Court entered a Judgment and Order pursuant to a settlement agreement between Plaintiffs and the Defendant Town of Alton, New Hampshire, which effectively granted plaintiffs a height variance needed by plaintiffs in order to construct a 100-foot tall antenna tower (the "Consent Decree"). The next step before plaintiffs can build this facility will be to apply to the Alton Planning Board for site plan approval, *see* Consent Decree at

¶ 6(a). The planning board process should take approximately ninety (90) days. Plaintiffs hope that the process will be concluded, and a building permit issued, in time for construction to begin prior to the onset of the 2010 - 11 winter season.

2. In addition to approving the Consent Decree, this Court also determined that upon entry of the Consent Decree, the Intervenor-Defendants, David and Marilyn Slade (hereinafter the "Slades"), no longer had any standing to be heard in this Court, in that they have never asserted any independent federal claim and, indeed, they do not possess any such claim. *See* Memorandum Order dated May 7, 2010, at n.1 and accompanying text.

3. The Slades nevertheless filed a Motion on May 20, 2010, asking this Court to impose "a discretionary stay which would have the effect of preventing ... the immediate construction of [the] proposed" tower pursuant to the Consent Decree. As already noted, no construction is to occur before site plan approval by the Alton Planning Board, *see* Consent Decree at ¶ 6(a), but even if "immediate construction" were scheduled to occur, the Slades would not be entitled to a stay of the enforcement of the Consent Decree.

4. Rule 62(c) of the Federal Rules of Civil Procedure governs the issuance of a stay to prevent enforcement of a judgment awarding injunctive relief pending an appeal from that judgment. *See Fed. R. Civ. P. 62(c)*. A party seeking a stay under this Rule must make a "strong showing that he is likely to prevail" on the appeal, and the Court also must consider the potential harm to the moving party, the potential harm to the non-moving party, and the public interest. *See Anderson Gov't of the Virgin Islands*, 947 F. Supp. 894, 897 (D.V.I. 1996), *citing Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). *See, also, Sierra Club v. Wagner*, 2008 WL 3823700 (D.N.H.)(not for publication). In their Motion For A Stay, however, the Slades do not invoke Rule 62(c) but instead argue that they are entitled to a stay pending a

threatened (and therefore hypothetical) state court collateral attack on the Consent Decree entered in the federal court. Since Rule 62 does not apply, general equitable principles — including a showing of a likelihood of success and a showing of irreparable harm — govern the request for such a stay. *See Illinois Bell Telephone Co. v. Worldcom Tech,* 157 F.3d 500, 502 (7th Cir. 1998).

5. The Slades do not address the applicable standards, let alone cite any authority for the proposition that this Court should issue a stay merely because they have threatened to mount a collateral attack on the Consent Decree. Instead, they cite a series of cases that involved the potential for duplicative litigation on the merits — a circumstance not present in this case. The duplicative litigation cases do not help the Slades. In *Centronics Data Computer v. Merkle-Korff Industries,* 503 F. Supp. 168, 170 (D.N.H. 1980), for example, "the two actions were the same [and stemmed] from a purchase order agreement," so the court determined it would be in the interests of judicial economy not to have two identical actions proceed simultaneously. Similarly, *Universal Gypsum of Ga. v. American Cyanamid*, 390 F. Supp. 824 (S.D.N.Y. 1975) involved "a federal diversity action raising only state law issues . . . commenced by an in-state plaintiff at a time when a previously or simultaneously commenced action is pending in the courts of his own state involving the same parties and issues," such that a stay of the federal case was appropriate. 390 F. Supp. at 830. And, in *Companion Life Ins. Co. v. Matthews*, 547 F. Supp. 836 (S.D.N.Y. 1982), the court focused on "(t)he waste of judicial resources resulting from concurrent proceedings in ... two forums" before deciding to issue a stay of the "duplicative" federal case. 547 F. Supp. at 842. Finally, in *Alameda Room, Inc. v. Pitta*, 538 F. Supp. 1072 (S.D.N.Y. 1982) a duplicative federal action was stayed in favor of a state court case in which discovery had been completed and which was about to proceed to trial. 538 F. Supp. at

1074. Plainly, the concern for *judicial* efficiency which each of the above cases raised is not present here, where the federal case has been concluded. To be sure, the Slades allege that they "intend to timely pursue State Court remedies among other possible remedies" but at this point, it is anyone's guess when they might do so, what remedies they might pursue, and if they do proceed, whether the claims for relief they might assert would have any chance of success.

6. In addition to citing duplicative litigation cases, the Slades also mention two United States Supreme Court cases in which single Justices of that Court articulated the standards for a stay pending *certiorari* review. While somewhat closer to the mark than the duplicative litigation cases, these two Supreme Court cases nevertheless are not on point. In *Barnes v. E-Systems, Inc.*, 501 U.S. 1301 (1991), Justice Scalia found "a substantial possibility that the judgment below will be reversed" and that immediate enforcement of the judgment could result in "unlawful interference with state tax collection," and concluded that, ultimately, the decision involved a balancing of the equities. In *Rostker v. Goldberg*, 448 U.S. 1306 (1980), Justice Brennan found there were at least "fair" prospects of a reversal of the judgment appealed from and also found that significant injury, including potential frustration of coordinate branches of the federal government "in shaping foreign policy," could occur if a stay were not ordered; again, the balancing of the equities was the critical concern. Here, in contrast to both *Barnes* and *Rostker*, the Slades have merely hinted at a proposed state court lawsuit, and have left the Court and the parties to guess as to its timing and substance. Plainly, a mere reference to an unarticulated claim for relief which might be brought in the future in a state court cannot even be analyzed for its prospects, so this does not satisfy the "prospects for reversal" requirement relied upon in *Barnes* and *Rostker*.

7.      In any event, and as already noted in paragraph 4, above, to obtain a stay the Slades must show that they meet the equitable standards of likelihood of success and a likelihood of irreparable harm. They have not made such a showing.

**Likelihood Of Success**

8.      Because the Slades have not articulated any specific claim or remedy that they might pursue in state court, it is not possible to say with absolute certainty that they lack any possibility of success, but their prospects certainly are very poor.  In this regard, it seems almost certain that any state court claim which they might assert will be an impermissible collateral attack on a federal court judgment based on state law.  The First Circuit's decision in *Brehmer v Wellfleet*, 238 F.3d 117 (1st Cir. 2001) established that parties to federal court litigation under the TCA can enter into settlement agreements without the necessity of following the state processes that typically apply in land use cases, and that the federal courts will enforce the resulting consent decrees without regard to such processes.  *See Brehmer*, 238 F.3d at n. 4 and accompanying text, *citing Lucas v. Planning Board of LaGrange*, 7 F. Supp.2d 310, 322 (S.D.N.Y. 1998).  *See, also, Patterson v. Omnipoint Communications, Inc.*, 122 F. Supp. 222, 227-28  (D.Mass. 2000), *aff'd per curiam* 23 Fed.Appx.17 (2001) (unpublished opinion).

9.      The principles established in *Lucas, Patterson* and *Brehmer* have been followed in a number of cases. In *Livingstone v. Davies*, 18 Mass.L.Rptr. 687 (2004), for example, the Superior Court in Massachusetts noted the preemptive effect of federal law in these cases found it "eminently reasonable" to assess attorneys' fees against parties who had mounted a state court challenge to a federal injunction directing local boards to issue permits for the installation of wireless antennas.

10. *Metheny v. Becker*, 352 F.3d 458 (1st Cir. 2003), is particularly instructive. In that case, abutters to the site of a proposed antenna tower brought an action in the Massachusetts Land Court to challenge a variance issued by a local board pursuant to a federal consent judgment. The applicant removed the abutters' state court challenge to federal court, which then dismissed the abutters' case, citing the preemptive effect of the TCA. The First Circuit, however, found that although the TCA *does* preempt state law procedures, the preemptive effect of the TCA was not sufficient to create removal jurisdiction, and thus ruled that the abutters' attack on the consent decree had to be remanded to the Land Court. *See Metheny,* 352 F.3d at 460. The First Circuit nevertheless emphasized the preemptive impact of the TCA as well as the federal court's duty to protect its orders, and even noted that it might be appropriate to enjoin the state court proceedings if necessary to protect the district court's judgment. *See Metheny,* 352 F.3d at 462 (*citing* an exception to the Anti-Injunction Act, 28 U.S.C. § 2283). Following the remand to the Land Court, that court addressed the preemption issue as follows:

> Developing case law prescribes that state court review of Federal Judgments entered pursuant to the TCA, constitutes "a groundless attempt to circumvent a valid order. When a federal decree mandates that a local zoning board comply with its order, an action to enjoin the local board from carrying through with the decree is 'an impermissible collateral attack' on that decree."

*Metheny v. Becker,* 2004 WL 2618656, *2 (Mass.Land Ct.)(internal citations omitted). The court then dismissed the abutters' suit. *Id.* at *3.

11. In light of these authorities, even assuming the Slades eventually commence an action in state court alleging that state procedures were not followed by the Town when it settled this federal case, it appears highly unlikely that any state court could fashion a remedy which would invalidate the Consent Decree or which would interfere with this Court's enforcement of

that Decree. It thus cannot be said that the Slades have demonstrated any chance of success, let alone a likelihood of success.

**Public Interest; Irreparable Harm; Balancing of the Equities**

12. As this Court is aware, plaintiffs have been attempting since at least 2004 to provide wireless services to the Alton Bay area, and the proposed 100-foot tower is the only way to do so. The services which are to be provided by this facility are consistent with national policy, which favors deployment of wireless networks. *See, e.g., Omnipoint Holdings v. City of Cranston*, 586 F.3d 38, 50-51 (2009). According to Congress, "[s]eamless, ubiquitous, and reliable wireless [networks]" are not only a convenience to the users of wireless devices, but also "promote public safety [by] provid[ing] immediate and critical communications links among members of the public [and] [emergency service providers]." *Wireless Communications and Safety Act of 1999*, Pub. L. 106-81, 113 Stat. 1286, 1287 § 2(a)(6) (1999). *See, also,* 47 U.S.C. § 615.

13. In addition to the obvious public interest favoring the deployment of wireless services in the Alton Bay area, plaintiffs themselves have legitimate, albeit private, economic interests which also favor the immediate construction of this facility. It cannot be seriously disputed that plaintiffs have made an enormous investment of time and resources over the past six (6) years, and they ought to be allowed an opportunity to begin seeing a return on that investment without additional delays.

14. In contrast to these public and private interests, the Slades offer the argument that construction of an access driveway and perhaps other construction activity on the 28.4 acre parcel which abuts their property might occur before their "rights" can be determined, and this construction activity might somehow be "irreparable" harm. Even assuming the Slades'

arguments concerning harm had any factual basis — which is at best unclear on the record they have presented — they fail to show how any harm they might suffer outweighs the harm to plaintiffs and to the public at large.

15.     And, as noted above, no construction is expected to begin for at least another 90 days, *i.e.*, until after the completion of the planning board process. Certainly the Town and the plaintiffs ought to be allowed to proceed with this critical next step without further delay. Even if this process is timely completed and plaintiffs do begin to construct their long anticipated wireless facility while the Slades continue efforts in the courts to invalidate the Consent Decree, the plaintiffs can always be ordered to remove the structure if it turns out it the Consent Decree (or any other authorization obtained by plaintiffs) was improperly issued. Any "harm" to the Slades under such circumstances would surely be relatively easy to remedy and thus cannot be said to be "irreparable."

16.     Finally, although the Slades did not bring this Motion as a Rule 62(c) Motion, plaintiffs note that on Friday, June 4, 2010, the Slades did file a Notice of Appeal, so this Motion could be deemed a Rule 62(c) motion. As previously explained in paragraph 4, above, under Rule 62(c), the Slades must satisfy the same basic burdens – a showing of a likelihood of success on appeal and a showing of irreparable harm –  as they have to satisfy under general equitable principles. The Slades cannot do so. Most importantly, the Slades will not prevail on their appeal. As this Court found in its May 7, 2010 Memorandum and Order, under federal law – including controlling precedent from the United States Supreme Court – the Slades do not possess any independent basis to participate in this case, and their role as intervenors did not include a veto power over any settlement that might be reached between the Town and the plaintiffs. Accordingly, they cannot show that they have a likelihood of success on appeal. And,

they also cannot show that they will be irreparably harmed without a stay, let alone that either the public interest or the balance of the harms weigh in favor of a stay.

17. A stay of enforcement of the Consent Decree would conflict with the objectives of Congress as expressed in the TCA, s*ee Brehmer,* 238 F.3d at 121-122, and would cause immediate harm to the plaintiffs as well as to the public at large, while creating at most a nebulous benefit to the Slades. Particularly given the absence of any real chance of success for the positions they appear ready to take in either state court of the Court of Appeals, there simply is no basis for such a stay at this juncture.

WHEREFORE, for all the foregoing reasons, Plaintiffs respectfully request that this Honorable Court:

A. Deny the Motion to Stay; and

B. Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

INDUSTRIAL COMMUNICATIONS AND
ELECTRONICS, INC., RCC ATLANTIC, INC.
d/b/a UNICEL and U.S.C.O.C. OF NEW
HAMPSHIRE RSA #2, INC. d/b/a U.S. CELLULAR

By their attorneys,

DEVINE, MILLIMET & BRANCH,
PROFESSIONAL ASSOCIATION

Date: June 7, 2010

By: /s/Steven E. Grill
Steven E. Grill, Esquire (No. 7896)
111 Amherst Street
Manchester, NH 03101
(603) 669-1000
SGrill@DevineMillimet.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing will be sent to counsel of record this day via the Court's Electronic Case Filing system.

Date: June 7, 2010                              /s/ Steven E. Grill_____
                                                Steven E. Grill, Esquire