```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW HAMPSHIRE
```

Industrial Communications
and Electronics, Inc. *et al.*

    v.                                         Civil No. 07-cv-082-JL
                                                  Opinion No. 2010 DNH 175

Town of Alton,
David Slade, and Marilyn Slade


**MEMORANDUM ORDER**

David and Marilyn Slade, who intervened in this action by wireless service providers challenging the Town of Alton's decision denying a variance to construct a cellphone tower as a violation of the Telecommunications Act of 1996 ("TCA"), move to stay the court's order granting the variance with certain modifications. The order entered on the joint request of the providers and the town, who agreed to its terms as a settlement of the providers' claims. As a result of that settlement--which did not include any claims by the Slades--this court directed the entry of final judgment in this action. Indus. Commc'ns & Elecs., Inc. v. Town of Alton, 2010 DNH 081 ("Order for Judgment"). This was done over the Slades' objections, including that judgment could not enter before they were permitted to

resolve their own purported claims, and that the settlement violated the procedural requirements of local land use law.

As fully explained infra, the Slades' motion to stay is denied. In support of their motion, the Slades rely on their pursuit of unspecified "remedies" against the construction of the tower in state court, arguing that the providers have invoked the Order for Judgment as "preempting" those proceedings. Whether the providers are correct, however, is an issue to be decided by the state court, not by this court, so that situation does not support the requested stay.

The Slades also suggest that, should those proceedings result in the relief they seek--which, presumably, includes an order preventing the construction of the tower--allowing construction to proceed in the interim threatens "unnecessary waste and costly land reclamation processes." But this concern does not justify staying this court's order because (1) the burdens of that waste and cost will fall exclusively on the providers, should they elect to proceed with the construction in the face of a lawsuit that seeks to enjoin it, and (2) this court cannot meaningfully assess the Slades' likelihood of prevailing in such a lawsuit, because they have provided virtually no information about it. For largely the same reasons, the fact

that the Slades have appealed the Order for Judgment to the court of appeals also does not justify staying it.

I.   **Background**

This case began when the providers challenged a decision by the town denying them the variance necessary to construct a cellphone tower as a violation of the TCA, specifically 47 U.S.C. §§ 332(a)(7)(B)(i)(II) and 332(a)(7)(B)(iii). About three months later, the Slades, who own property abutting the site of the proposed tower, moved to intervene both as of right and permissively. See Fed. R. Civ. P. 24. The motion was granted without any objection from the providers or explanation by the court. See Order of Aug. 2, 2007 (Barbadoro, J.).

The providers and the town proceeded to engage in extensive motion practice over the next two and a half years. The Slades, meanwhile, filed nothing of substance, including any pleading setting forth whatever claims they wished to assert. Eventually, the providers advised the court that they had settled their claims against the town, and filed, together with the town, an "Agreement for Entry of Consent Decree." Among other things, the proposed consent decree ordered the town's decision denying the variance for the tower to be "vacated . . . amended and modified to grant" the variance subject to certain conditions, and

directed the providers to "submit revised site plans for site plan review by the Alton Planning Board" in connection with the proposed tower. The court then ordered the Slades—-who had refused to join in the settlement—-"to file a memorandum regarding their continued standing in this matter following [the] settlement under applicable law." Order of Mar. 9, 2010.

In response, the Slades argued that they "retain[ed] their right to press their claims that the proposed communications tower violates local zoning ordinances and that the . . . decision [to deny the variance] does not contravene the [TCA]." They further argued that entering the consent decree granting the variance would "create an independent claim" by the Slades under the TCA and would also violate New Hampshire law. Importantly, the Slades did not ask the court to conduct a hearing on the fairness or appropriateness of the proposed consent decree.

The court subsequently issued the Order for Judgment, entering--with one alteration described infra--the consent decree proposed by the providers and the town as the final judgment in this matter. The court overruled the Slades' purported "objections" to the settlement, noting that an intervenor cannot "'preclude other parties from settling their own disputes and thereby withdrawing from the litigation.'" Order for Judgment at 3 (quoting Local No. 93, Int'l Ass'n of Firefighters v. City of

4

Cleveland, 478 U.S. 501, 528-29 (1986)).  The court also noted that "'approval of a consent decree between some of the parties . . . cannot dispose of the claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor.'"  Id. at 4 (quoting Local No. 93, 478 U.S. at 529).  The court ruled, however, that the Slades "have not 'properly raised any claims of their own . . . .  Like the intervenors in Local [No.] 93, [they] 'did not allege any causes of action or assert any claims against' any of the original parties to the lawsuit."  Id. (quoting 478 U.S. at 507).

The court rejected the Slades' attempt to raise, for the first time in their "recently filed briefing on whether judgment could enter without their consent," a claim that the town's denial of the variance for the tower did not violate the TCA. Id. at 4-5.  The court reasoned that, because the Slades had previously "submitted nothing whatsoever on the merits of the provider's TCA claims," yet had intervened more than two years ago, "[t]his unexplained delay is enough to conclude that the Slades cannot now start pursuing a claim that [the town's] decision to disallow the proposed tower complied with the TCA." Id. at 5-6 (footnote omitted).

The court acknowledged that, while the Slades' "purported claim that the proposed tower violates local zoning law" did not

5

become "ripe until [the town] agreed to allow the provider to put up a cell tower as a settlement of the case and therefore could not have been asserted earlier, . . . it does not follow that the Slades can now bring that claim in this court." Id. at 7.  The court observed that, "once the claim that originally gave rise to federal subject-matter jurisdiction is dismissed, the court cannot adjudicate the intervenor's claim unless it provides 'a separate and independent basis for jurisdiction.'" Id. (quoting Benavidez v. Eu, 34 F.3d 825, 830 (9th Cir. 1994) (further quotation marks omitted)).  The court ruled that, while the Slades expressly acknowledged this requirement, they failed to comply with it.  See id.  Although the Slades claimed that the town's decision to allow the tower violated both the TCA and local zoning law, that first claim was forfeited because it did not appear until their reply memorandum and, in any event, was foreclosed by both the language of the TCA and unanimous caselaw, see id. at 8-9, and the second claim "did not itself present any federal question," id. at 7-8 (citing Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992)).

    Relatedly, the court ruled that the Slades' argument that the town's "agreement to issue the required permit[] for the tower[] as a settlement . . . is in violation of state law requiring land use permits to issue only as the result of public

6

meetings and the like" did not prevent the court from "entering the judgment[] that the providers and the town[] have requested." Id. at 10. The court reasoned that it "need no more inquire into any aspect of the settlement[] here--including the [town's] legal authority to enter into [it]--than this court need inquire into any party's legal authority to enter into a settlement of any case." Id. at 11. The court also relied on a decision by the court of appeals that "expressly upheld--in circumstances similar, if not identical, to those here--a district court's approval of a settlement agreement in a case under the TCA that called for the issuance of 'injunctive relief in the form of an order requiring that the wrongfully withheld permit issue,' despite objections that this course violated 'the procedural strictures of Massachusetts zoning law.'" Id. at 12 (quoting Brehmer v. Planning Bd. of Town of Wellfleet, 238 F.3d 117 (1st Cir. 2001)).

The court was careful to note, however, that it was expressing no view on the merits of the Slades' state-law arguments--because, again, those arguments simply had no bearing on the court's ability to enter final judgment in the case. Id. at 11. Indeed, the court specifically cautioned that it was "not saying that [the Slades] have no remedy for the injury they claim the proposed tower will cause them, only that this court would

7

have no jurisdiction to provide it (assuming they are entitled to one, an issue on which this court expresses no opinion whatsoever)." Id. at 10 n.2. Furthermore, the court added a proviso to the proposed judgment that "'[n]othing in this order shall prevent this court from staying or otherwise granting relief from it according to applicable law.'"[1]  Id. at 13.

The Slades then filed a timely appeal of the judgment. Indus. Commc'ns & Elecs., Inc. v. Town of Alton, No. 10-1738 (1st Cir. June 21, 2010). The providers filed a "Motion for Summary Disposition for Lack of Standing," see 1st Cir. R. 27.0(c), arguing that the Slades had no standing to maintain the appeal under Article III of the Constitution. The court of appeals denied the motion, ruling that the Slades had "alleged sufficient individualized concrete harm to satisfy the actual injury prong of Article III standing." Order of Aug. 19, 2010. So the court ordered full briefing, with the Slades filing their opening brief on September 7, 2010, and the providers' brief due 10 days later.

---

[1] The relevant paragraph of the proposed judgment stated that "[n]otwithstanding the provisions of [N.H. Rev. Stat. Ann. §] 677:15 or any other law or regulation . . . the filing of any appeal or challenge to any decision or action of the [town] Planning Board shall [not] operate as a stay." This refers to the fact that, before construction of the tower can commence, the providers need to obtain site plan approval from the Alton Planning Board. Their application for that relief is pending, but the Planning Board has yet to act or even hold a public hearing on it.

## II. Analysis

In support of their motion, the Slades rely solely on cases considering whether a federal court should "for reasons of comity and efficiency stay an action when a suit is pending in a state court between the same parties which will conveniently and authoritatively dispose of the issues in dispute between the federal litigants."[2] Centronics Data Computer Corp. v. Merkle-Korff Indus., 503 F. Supp. 168, 169-70 (D.N.H. 1980); see also Companion Life Ins. Co. v. Matthews, 547 F. Supp. 836, 837-38 (S.D.N.Y. 1982); Alameda Room, Inc. v. Pitta, 538 F. Supp. 1072, 1077 (S.D.N.Y. 1982); Universal Gypsum of Ga., Inc. v. Am. Cyanamid Co., 390 F. Supp. 824, 826 (S.D.N.Y. 1975).  But that does not aptly describe the relationship between this action and the state-court litigation commenced by the Slades, which presumably (again, they have provided virtually no information about it) challenges the variance for the tower as at odds with state land use law.  This court has already entered judgment

---

[2] The Slades also rely on a Supreme Court case discussing whether to stay a lower federal court judgment pending certiorari. Barnes v. E-Sys., Inc. Med. & Surgical Ins. Plan, 501 U.S. 1301 (1991).  If that case provides any guidance here at all, it is by way of analogy to the issue of staying an order pending appeal, discussed infra.

9

here, and did so without considering the merits of any state-law claim by the Slades. See Order for Judgment at 10. This is not a situation, then, where a state and federal court simultaneously have similar issues under consideration, threatening "'economy of time and effort for [the courts], for counsel, and for litigants'" if both actions proceed. Centronics, 503 F. Supp. at 170 (quoting Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936)).

In fact, unlike in the cases they cite, the Slades do not seek to stay this litigation--which has already ended--but to stay the implementation of the court's order which ended it. They need this relief, they suggest, "so as to allow the State proceedings to proceed unimpeded," because the providers and the town have argued to the state court that the this court's Order for Judgment "preempts State action." Though the Slades do not explain further, the providers say that they have argued to the state court that "the Slades cannot use state law or state or local forums to mount a collateral attack on a federal court judgment." Thus, the Slades seem to want this court to stay its Order for Judgment so that the providers can no longer make this argument to the state court.

If granted, however, that relief would effectively usurp the state court's authority to decide the merits of the providers' argument. And there is no question that the authority to make

that decision belongs to the state court, not this one.[3]  The court of appeals has held that raising a federal court's consent decree as a defense to state-law claims in state court does not create federal subject-matter jurisdiction where it does not otherwise exist—-and reached that conclusion specifically in the case of a decree resolving TCA claims by directing the issuance of a variance for a cell tower.  See Metheny v. Becker, 352 F.3d 458, 460-61 (1st Cir. 2003).  More generally, "[t]he first court does not get to dictate to other courts the preclusion consequences of its own judgment."  18 Charles Alan Wright et al., Federal Practice & Procedure § 4405, at 82 (2d ed. 2002) (footnote omitted).

Accordingly, if the Slades want to argue that this court's order does not foreclose their state-law claims--whatever those claims are; again, the Slades do not say--they must make that argument to the state court, which is the forum with the jurisdiction to consider it.  Indeed, the Slades essentially concede as much, arguing that the state court "has appropriate jurisdiction to hear" their claims.  So this court will not, under the guise of staying the Order for Judgment, decide its

---

[3]According to the providers, the state court has scheduled a hearing on the merits of their argument for October 6, 2010.

effect on the Slades' yet-unidentified state-law claims. This court expresses no view on that subject.[4]

In seeking the stay, the Slades also argue that "[i]t would lead to unnecessary economic waste and costly land reclamation processes if [the providers] were to build the intended phone tower to, only then, be ordered to remove it," presumably as a result of the state-court proceedings should the Slades prevail in them. Because this court's order, in relevant part, effectuates the variance needed to build the tower, staying the order pending the outcome of the state-court litigation would certainly prevent any such waste or cost. To achieve a stay for that purpose, however, the Slades would need to show that "the harm caused [them] without the stay, in light of [their] likelihood of eventual success on the merits [in the state-court action], outweighs the harm the stay will cause the non-moving party." Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 17 (1st

---

[4]This court is nevertheless constrained to point out that the Slades' motion grossly mischaracterizes the order as "noting that the Slades had clearly articulated a state claim to [*sic*] which they were entitled to pursue at this point." The order could not have been clearer that this court was expressing no view as to the Slades' "entitlement" to any state-law relief. See Order for Judgment at 10 n.2 ("this court is not saying that they have no remedy for the injury they claim the proposed tower will cause them, only that this court would have no jurisdiction to provide it (assuming they are entitled to one, an issue on which this court expresses no opinion whatsoever)") (emphasis added), 11 ("This court, however, expresses no views on the merits of [the Slades' state-law] arguments").

Cir. 2002) (quotation marks and bracketing omitted). They have failed to make that showing.

First, the Slades have not explained how leaving the order in place while they pursue the state-court action threatens any harm to them (aside from their point that staying the order would stop the providers from arguing that it precludes their state-law claims which, again, needs to be considered by the state tribunal, not this one). Indeed, the harm from any "waste" or "costs" that would follow should the providers begin to build the tower--only to be told to stop if the Slades ultimately prevail before the state court--fall on the providers, not on the Slades.[5] Second, this court cannot meaningfully assess the Slades' likelihood of prevailing in the state-court litigation because, again, they have provided virtually no information about it. Third, the providers quite plausibly assert that they will suffer harm from a stay, in the form of further delays to the construction of the tower.

The Slades also point out that they have appealed the Order for Judgment to the court of appeals, though they stop short of specifically arguing that this court should stay the order

---

[5]Furthermore, as discussed <u>supra</u> at note 1, construction of the tower cannot commence until the providers obtain site plan approval from the town's planning board—-which has yet even to hold a hearing on that application--so any harm to the Slades from the construction remains speculative at this point.

pending the outcome of that appeal.  See Fed. R. Civ. P. 62(c).[6] In any event, they would not be entitled to that relief, which depends, again, on "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  Hilton v. Braunskill, 481 U.S. 770, 776 (1987).  The Slades cannot satisfy these criteria, largely for the reasons just discussed:  any injury to them as a result of variance effectuated through the Order for Judgment can be remedied by taking the tower down, should the providers start building only to lose the appeal, while further delays pending the appeal would injure both the providers and the public interest in improved wireless coverage in the area.

The Slades' only argument for their likelihood of success on appeal is based on the ruling by the court of appeals denying the provider's motion for summary disposition; that decision, they say, "demonstrates a higher likelihood of success on appeal than may have been assumed by either the [providers] or the District

---

[6] In relevant part, this rule provides that "[w]hen an appeal is taken from . . . final judgment granting . . . an injunction, the district court in its discretion may suspend . . . an injunction during the pendency of the appeal."

14

Court."  Yet, as discussed supra, the providers' motion for summary disposition argued only that the Slades lacked Article III standing to pursue the appeal, and the order by the court of appeals denying the motion addressed only that argument.  This court's order entering judgment over the Slades' objections, however, was not based on any lack of standing but, as discussed at length above, their failure to raise a claim within this court's subject-matter jurisdiction in a timely manner or, indeed, at any point up to and including their briefing on whether the judgment could enter without their consent.  So the court of appeals' ruling that the Slades "have alleged sufficient individualized concrete harm to satisfy the actual injury prong of Article III standing" says little if anything about their chances of success on appeal.  It says only that their appeal will not be dismissed for lack of Article III standing.

Aside from their reliance on the order denying the motion for summary disposition, the Slades do not attempt to demonstrate that they are likely to succeed on appeal but, needless to say, this court does not believe that they are.  In their opening brief, the Slades argue principally that (1) they have Article III standing and (2) this court erred by failing to grant them an evidentiary hearing to contest the "fairness" of the consent

judgment. In this court's view, these arguments are unlikely to succeed in overturning the judgment.

First, as just explained, this court never ruled that the Slades lacked Article III standing. Instead, this court ruled that the Slades lacked a properly presented claim falling within the court's subject-matter jurisdiction, which they explicitly acknowledged was necessary in order to continue litigating as intervenors after the providers and the town settled their claims. Rather than addressing this ruling, the Slades' appellate brief extensively discusses a number of state-law claims, without explaining how this court would have subject-matter jurisdiction over them.[7] Second, the Slades never asked this court to conduct an evidentiary hearing on the "fairness," or any other aspect, of the proposed consent judgment. "If any principle is settled in [the] circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be raised for the first time on appeal." Boroian v. Mueller, ___ F.3d ___, 2010 WL 3168654, at *8 (1st Cir. Aug. 12, 2010) (quotation marks omitted).

---

[7]The Slades also argue that they can bring a claim challenging the tower under the TCA. As this court ruled, however, that argument was not timely raised here, is inconsistent with the language of the TCA, and has been uniformly rejected by the caselaw. Order for Judgment at 7-9. The Slades' appellate brief does not address these deficiencies.

16

Finally, in support of their motion for stay, the Slades rely on the fact that the Order for Judgment modified the proposed consent decree to add that "[n]othing in this order shall prevent this court from staying or otherwise granting relief from it according to applicable law."  The court inserted that provision, however, in the paragraph of the proposed decree stipulating that any appeal from the Alton Planning Board's decision on the providers' application for site plan review, see note 1, supra, would not operate as a stay of the decree.  Thus, the provision does not contemplate that an appeal of the variance (as opposed to any site plan approval or disapproval) would potentially justify a stay.  In any event, the provision simply allows a stay "according to applicable law," and, as just discussed, the Slades have failed to demonstrate their entitlement to stay under the applicable standards.

## III. Conclusion

For the foregoing reasons, the Slades' motion to stay[8] is DENIED.

---

[8] Document no. 78.

17

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: October 4, 2010

cc: Steven E. Grill, Esq.
    Anthony S. Augeri, Esq.
    Katherine Blackall Miller, Esq.
    Robert D. Ciandella, Esq.
    Robert M. Derosier, Esq.
    Paul T. Fitzgerald, Esq.